**IT IS ORDERED as set forth below:**



**Date: August 26, 2025**

_____
Susan D. Barrett
United States Bankruptcy Judge
Southern District of Georgia

_____

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE

SOUTHERN DISTRICT OF GEORGIA
Augusta Division

| | | |
|---|---|---|
| IN RE: | ) | Chapter 13 Case |
| | ) | Number 22-10790 |
| CHANDRA DIXON BEY | ) | |
| | ) | |
| Debtor(s). | ) | |
| | ) | |

## OPINION AND ORDER

Chandra Dixon Bey's ("Debtor's") Objections ("Objections") to the Proof of Claim of LoanDepot.com LLC ("LoanDepot") (Dckt. Nos. 61, 71) and Motions to Dismiss Prepetition Arrears Claim ("Motions") (Dckt. Nos. 104, 107, 109) challenge LoanDepot's standing to pursue its $297,912.19 proof of claim. Claim No. 11. After considering the matter and evidentiary hearings, the Debtor's Objections are overruled, and the Motions are denied as to the prepetition matters. These are core proceedings pursuant to 28 U.S.C. §157(b)(2)(A), (B), (K), and (O), and the Court has jurisdiction to consider the matter under 28 U.S.C. §1334.

1

**FINDINGS OF FACT**

LoanDepot filed a proof of claim in the amount of $297,912.19. Claim No. 11 ("Claim"). Attached to the Claim are the following four documents:

1) a $253,200.00 promissory note ("Note") executed in 2017 by Debtor, as borrower, in favor of LoanDepot, as the lender. Id. at 12–16;

2) a security deed ("Security Deed") executed in 2017 by Debtor (as borrower), LoanDepot (as lender) and Mortgage Registration Systems, Inc. ("MERS") (as nominee for LoanDepot and its successors and assigns) pledging Debtor's principal residence ("the Property") as collateral for the loan. Id. at 17–31;

3) an Assignment of the Security Deed ("Assignment") from MERS to LoanDepot executed in 2020. Id. at 43; and

4) a completed Official Form 410A presenting an itemized statement of the principal amount and any interest, fees, expenses, and other charges incurred prepetition, along with the amount needed to cure any default as of the petition date, and the payment history of the loan from the first date of default to the filing of the bankruptcy petition. Id. at 4–6.[1]

The Note and Security Deed reflect this is a VA loan governed by federal and Georgia law and include the power of sale upon default. Id. at 12, 15, 17–18, 25–28, 41.

Debtor does not dispute she signed the Note and Security Deed or that the loan was accelerated and LoanDepot commenced foreclosure proceedings prepetition. See Dckt. Nos. 61, 104. Rather, she contends Ginnie Mae REMIC Trust is the actual owner of the loan, not LoanDepot. As a result, Debtor argues LoanDepot has no standing to pursue the Claim. Dckt. Nos. 61, 71, 88, 104, 107, 109.

---

[1] Various riders also are attached to the Claim.

Conversely, LoanDepot argues its proof of claim is valid and it is the proper party to pursue the Claim. See Dckt. Nos. 82, 105, 108. LoanDepot acknowledges the loan has been securitized but argues this does not change LoanDepot's standing or Debtor's obligations under the loan. LoanDepot further contends Debtor lacks standing to challenge the securitization of the loan because she is not a party to that transaction. Dckt. No. 82 at 4.

There have been extensive prepetition proceedings and litigation relating to this issue, and Debtor continues to file extensive pro se pleadings in this matter. The Claim includes $32,622.97 for LoanDepot's prepetition legal fees, costs, and other fees. Claim No. 11 at 4. The Note and Security Deed allow LoanDepot to collect attorneys' fees, costs, and fees. See Claim No. 11 at 14 ¶7(E); id. at 23–25 ¶¶ 9, 13. In the bankruptcy proceedings, Debtor was initially represented by counsel who filed an objection to the Claim requesting the Court "reduce the arrearage claim . . . to the amount of $40,422.05"[2] and award Debtor her expenses to litigate this matter. Dckt. 61 at 3. Thereafter, Debtor filed a pro se Notice to the Court Removing Counsel[3] and the Court entered an order allowing counsel to withdraw in December 2024. Dckt. Nos. 70, 86, 89. Since then Debtor has represented herself, filing extensive pleadings, renewing her objection to the Claim, requesting the prepetition arrearage claim be disallowed, requesting an accounting of her pre- and postpetition payments, and requesting sanctions be issued against LoanDepot. Dckt. Nos. 71, 88, 104, 107, and 109.

---

[2] The total arrearage in the Claim is $73,045.02, minus the $32,622.57 in attorney fees, costs, and other fees that Debtor disputes, equals $40,022.05. See Claim No. 11 at 4.

[3] Debtor's counsel also filed a Motion to Withdraw. Dckt. No. 86.

## CONCLUSIONS OF LAW

Debtor's pleadings raise two main issues with respect to the Claim.[4] First, she contends LoanDepot does not own the loan and therefore is not the proper party to pursue the Claim. See Dckt. Nos. 61, 71, 88, 104, 107, 109. Next, Debtor requests an accounting of her prepetition payments. See Dckt. No. 109. For the reasons discussed below, Debtor's Objections to LoanDepot's Claim are overruled, and the Motions are denied as to the prepetition matters.

When a proof of claim contains all the information required under Bankruptcy Rule 3001, it constitutes "prima facie evidence of the claim's validity and amount." Fed. R. Bankr. P. 3001(f). Rule 3001(a) provides that a proof of claim "must substantially confirm to [Official] Form 410." Fed. R. Bankr. P. 3001(a). Rule 3001(c)(1)–(2) specifies the supporting documentation required to be attached to proofs of claim.

> (1) Claim or Interest Based on a Writing. If a claim or an interest in the debtor's property securing the claim is based on a writing, the creditor must file a copy with the proof of claim . . . .
>
> (2) Additional Information in an Individual Debtor's Case. If the debtor is an individual, the creditor must file with the proof of claim:
>
>> (A) an itemized statement of the principal amount and any interest, fees, expenses, or other charges incurred before the petition was filed;
>>
>> (B) for any claimed security interest in the debtor's property, the amount needed to cure any default as of the date the petition was filed; and
>>
>> (C) for any claimed security interest in the debtor's principal residence:
>>
>>> (i) Form 410A[5]; and

---

[4] The initial Objection to Claim was filed by Debtor's counsel before she opted to proceed pro se. Dckt. Nos. 70, 86, 89.

[5] Form 410A "implements the requirements of Rule 3001(c)(2)(A) and (B)." See United States Courts, Official Form 410A Instructions for Mortgage Proof of Claim Attachment,

4

> (ii) if there is an escrow account connected with the claim, an escrow-account statement, prepared as of the date the petition was filed, that is consistent in form with applicable nonbankruptcy law.

Fed. R. Bankr. P. 3001(c)(1)–(2). Additionally, "if a creditor claims a security interest in the debtor's property," Rule 3001(d) requires the claim to be accompanied by "evidence that the security interest has been perfected." Fed. R. Bankr. P. 3001(d).

In this case, the Claim contains all the information required under Rule 3001:

- It was completed on Official Form 410 and signed by LoanDepot's attorney. Claim No. 11 at 1–3;

- Copies of the Note, recorded Security Deed, various riders, and an Assignment of Security Deed (from MERS, as nominee of Loan Depot, back to LoanDepot) were to attached to the Claim. Id. at 12–43;

- LoanDepot filed Official Form 410A, which provides an itemized statement of the principal amount and any interest, fees, expenses, and other charges incurred prepetition, along with the amount needed to cure any default as of the petition date, and the payment history of the loan from the first date of default to the filing of the bankruptcy petition. Id. at 4–6; and

- LoanDepot filed an escrow account statement. Id. at 7–11.

Pursuant to Rule 3001(f), since the Claim was filed in accordance with Rule 3001, it constitutes prima facie evidence of the Claim's validity and amount. See Fed. R. Bankr. P. 3001(f). Thus, Debtor, as the objecting party, now has the burden to "come forward with enough substantiations to overcome the claimant's prima facie case." Benjamin v. Diamond (In re Mobile Steel Co.), 563 F.2d 692, 701 (5th Cir. 1977) (internal citations and quotations omitted). The objecting party must "support [her] objections with evidence to negate a fact set forth in the proof of claim." Walston v.

---

https://www.uscourts.gov/sites/default/files/b_410a_instructions_0.pdf (last visited Aug. 26, 2025).

PYOD, LLC (In re Walston), 606 F. App'x 543, 548 (11th Cir. 2015). "[A debtor] cannot overcome the prima facie validity of the claim[] simply by objecting." Id.

Debtor's main argument is that LoanDepot does not own the loan and therefore is not the proper party to pursue the Claim. She does not dispute that LoanDepot was the original lender but contends LoanDepot no longer holds the loan because it subsequently assigned the loan to the Guaranteed REMIC Pass Through Securities Ginnie Mae REMIC Trust 2017-122. However, Debtor's argument conflates two separate financial transactions—1) her conventional VA loan with LoanDepot, which is the focus of Debtor's liability on the Claim; and 2) the securitization of this loan with many other loans, which is a separate financial transaction.

Like many loans, this loan was pooled with numerous other loans and securitized on the secondary market. The securitization of the loan is a separate and independent financial transaction from Debtor's home mortgage loan with LoanDepot.

> The process of issuing a Ginnie Mae-backed security begins with a mortgage company that originates or buys qualifying federally-insured loans and pools them together. A bank or other lender then takes custody of the mortgage documents and Ginnie Mae approves the issuance of securities based on these mortgages. By backing the securities, Ginnie Mae guarantees to investors that if the issuer cannot timely pay the proper amount of principal and interest to the pool's investors, the U.S. government will pay any shortage of money. Ginnie Mae guarantees the performance of the issuer rather than the underlying collateral, so it neither buys loans nor issues its own securities. In return for the guarantee, which makes the securities more marketable to investors, the issuer pays a fee and gives Ginnie Mae a conditional interest in the underlying mortgages.
>
> Under the standard Guaranty Agreement between an issuer and Ginnie Mae, the issuer secures this conditional interest by assigning to Ginnie Mae the equitable title in the mortgage. United States v. NBD Bank, N.A., 922 F. Supp. 1235, 1240 (E.D. Mich. 1996). The issuer, however, retains legal title so that it may service the mortgages. Id. Put another way, the assignment to Ginnie Mae is a conditional assignment, which Ginnie Mae only has the right to accept and enforce "if the issuer defaults on its obligation to holders of the mortgage-backed securities." Poindexter v. Nat'l Mortgage Co., No. 94-5814, 1995 WL 242287, at *1 (N.D. Ill. Apr. 24, 1995)

(citing Nelson and Whitman, 2 Real Estate Finance Law § 11.3 at 75).  See also 37 No. CD-24 HDR Current Developments 28 (explaining that Ginnie Mae holds equitable title to loans backing securities it guarantees, but will only acquire legal title if the securities issuer defaults); Truth in Lending, 74 FR 60143-01 ("[A]s the guarantor of these securities, Ginnie Mae obtains equitable title in the mortgage loans but . . . the issuers of the securities retain legal title to the loans that collateralize the securities . . . . [L]egal title to the loans is not conveyed to Ginnie Mae unless the issuer of the securities defaults in its obligations."); Thomas P. Lemke, et al., Conditional Assignment of Collateral—Alternate Method to Secure Mortgages, MORTGAGE-BACKED SECURITIES § 8:14 (2015).

Hoffman v. Phelan Hallinan, LLP, No. 13-5700, 2016 WL 4089163, at *4 (E.D. Pa. Aug. 2, 2016) (some internal citations and emphasis omitted); see also Parra v. CitiMortgage, Inc., No. 1:13-CV-01840-RLV-JFK, 2014 WL 12860643, at *12 (N.D. Ga. Jan. 15, 2014) (internal citations and quotations omitted) ("Ginnie Mae guarantees securities that are collateralized by mortgage loans. Ginnie Mae obtains only equitable title in the mortgage loans. Legal title of the loans is not conveyed to Ginnie Mae unless the issuer of the securities defaults . . . .").

> The Government National Mortgage Association, known as Ginnie Mae, is a government-owned corporation within the Department of Housing and Urban Development . . . . [Its aim is] to attract capital to the market for federally insured mortgages [such as the Debtor's VA loan], and thus reduce costs to mortgage borrowers, while minimizing risk to taxpayers.  Ginnie Mae carries out that mission by guaranteeing the timely payment of principal and interest on mortgage-backed securities (MBSs) that private financial institutions create from home loans that are insured and guaranteed by other federal programs, such as those of . . . the Department of Veterans Affairs (VA) . . . .

Cong. Budget Office, Ginnie Mae and the Securitization of Federally Guaranteed Mortgages, at 1 (Jan. 12, 2022), https://www.cbo.gov/system/files/2022-01/57176-GinnieMae.pdf.

> Unlike with traditional mortgages, which lenders typically sell to securitizers (such as Frannie Mae or Freddie Mac), issuers of Ginnie Mae-guaranteed MBSs do not sell the underlying mortgages.  Instead, the issuer, or a designated party, continues to receive payments from borrowers and forwards part of those payments to the MBS investors . . . . If borrowers fail to make their payments, the issuer is required to send the expected principal and interest payments to the investors, as long at the underlying loans remain in the MBSs.  Once the issuer determines that a borrower is

AO 72A
(Rev. 8/82)

unable or unwilling to resume regular payments, it will remove the borrower's loan from the MBS, repay the investor the remaining principal balance, and try to recover the amount owed from the borrower.

Id. at 2–3.

Numerous courts have examined similar arguments from debtors and concluded loans pooled into a mortgage-backed securities bundle do not affect borrowers' obligations on the underlying loans. See, e.g., Fed. Nat'l Mortg. Assoc. v. Harris, No. 1:11-cv-03207-JOF, 2012 WL 13013000, at *3 (N.D. Ga. Aug. 13, 2012) ("Regardless of whether the loan was 'pooled' or 'securitized,' the debtor still has an obligation to repay."); Searcy v. EMC Mortg. Corp., No. 1:10-cv-0965-WBH, 2010 U.S. Dist. LEXIS 119975, at *2 (N.D. Ga. Sept. 30, 2010) ("While it may well be that Plaintiff's mortgage was pooled with other loans into a securitized trust that then issued bonds to investors, that fact would not have any effect on Plaintiff's rights and obligations with respect to the mortgage loan, and it certainly would not absolve Plaintiff from having to make loan payments or somehow shield Plaintiff's property from foreclosure.").

In this case, there is a clear chain of title showing LoanDepot is the proper party to pursue the Claim. The record reflects that MERS was LoanDepot's nominee and assigned the Security Deed back to LoanDepot. Claim No. 11 at 17, 43. Contrary to Debtor's assertions, there is no break in the chain of title. The fact that the loan was securitized does not affect Debtor's obligations with respect to LoanDepot. In addition, as discussed above, the securitization of this loan is a separate financial transaction from Debtor's loan with LoanDepot and her obligations thereunder.

Debtor has not tendered any admissible evidence to overcome LoanDepot's prima facie presumption of the validity or the amount of the Claim. Debtor contends the Court should admit the affidavits of William McCaffrey, a self-styled "securitization analyst," to show Ginnie Mae is

the true owner of the loan, not LoanDepot. See Dckt. No. 71 at 14–19; Dckt. No. 88 at 38–43; Dckt. No. 104 at 31–36; Dckt. No. 107 at 32–36; Dckt. No. 109 at 61–65. LoanDepot objects to the admission of these affidavits as hearsay. Rule 801 of the Federal Rules of Evidence defines hearsay as "a statement that [] the declarant does not make while testifying at the current trial or hearing; and [] a party offers in evidence to prove the truth of the matter asserted in the statement." Fed. R. Evid. 801(c). Rule 802 provides hearsay is not admissible unless a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court provide otherwise. Fed. R. Evid. 802. The affidavits do not fall within a recognized exception.[6] They are hearsay, and the representations within them are not subject to an exception to the hearsay rule; therefore, they are inadmissible.[7] Notwithstanding the foregoing, even if the affidavits are admitted, they do not overcome LoanDepot's prima facie case as to the validity and amount of the Claim.

Furthermore, to the extent Debtor is challenging the assignments related to the securitization, she does not have standing because she is not a party to this secondary financing. See generally Timbes v. Deutche Bank Nat'l Tr. Co. for Am. Home Mortg. Inv. Tr. 2005-3, 708 F. App'x 971, 974–75 (11th Cir. 2017) (citations omitted) (borrower does not have standing to challenge the validity of an assignment because she was not a party to that transaction or an intended third-party beneficiary); Parra v. CitiMortgage, Inc., 2014 WL 12860643, at *7 (non-party to an assignment lacks standing to challenge it).

---

[6] Debtor's citation to O.C.G.A. 9-14-48 is misplaced as that statute pertains to the procedure for seeking a writ of habeas corpus.

[7] This same analysis and conclusion also applies to the affidavit of Donna Steenkamp, a self-styled legal title researcher and investigator, that Debtor tendered. See Dckt. No. 71 at 21–25; Dckt. No. 107 at 42–46.

Finally, Debtor's demand for an accounting of the prepetition payments has been met by Official Form 410A attached to the Claim.

For these reasons, it is ORDERED that Debtor's Objections to LoanDepot's Claim are OVERRULED, and her Motions as to prepetition matters and the application of all prepetition payments are DENIED.[8]

**[END OF DOCUMENT]**

---

[8] As for the Debtor's continued objections to the application of her postpetition payments, LoanDepot has now tendered a payment history for these payments. See Dckt. No. 101. Debtor's continued objections as to the postpetition payments will be considered in conjunction with confirmation.